I'm going to say topic, am I right or wrong? Awesome. Mr. Topic, please proceed. Good morning, your honors. It pleases the court. The patent issue in this case relates to communication cycles in a medium access control protocol among a group of communicators. We're here on a order granting a motion to dismiss. The issue was not the sufficiency of the pleading or whether these were just bare bones allegations. There was a claim chart that was attached to the second amended complaint. The issue here is one of claim construction, and the issue is whether remotes, as is used in various parts of the claims, can include one remote. And the district court found the claims cover only communications where a single remote communicates with a hub. Sorry, does not cover claims where communications are between a single remote and a hub during a communication cycle. Even if we agree with you, though, on this claim construction issue, don't you still have the repeating cycle limitation? I mean, what the district court found, and the district court said, OK, you've complied with Twombly and Iqbal, but maybe you've, because you submitted so much, you've pled yourself out of court because you affirmatively pled that the allegedly infringing products work in a certain way, and it doesn't include a repeating cycle. So a couple of points on repeating cycle. The district court found that there wasn't any repeating that had been alleged. I don't think that's in dispute anymore. I think ComEd concedes that the cycle does repeat. These are smart meters. Of course they're going to repeat. They don't just communicate information once and then do nothing further. So I don't think the repeating part is really an issue anymore. The issue was getting at this notion of there being different types of intervals, three different intervals. The hub allowed to transmit, the remotes allowed to transmit, and the remote expecting to receive the transmission. And what this court said in the Medtronic appeal was that those first and those third things presumably are not mutually exclusive. And really what the district court held was that- But the court also said in that that the intervals have to be predetermined. And to the extent there's any repetition, it just means that someone's going to start it up again. It's not like there's any predetermined communication in the accused devices. So that issue really wasn't decided by the district court. I mean, the issue was simply whether were they repeating cycles or not. The predetermined part I don't think is really properly at issue. The issue was really that's been argued here and at the district court was whether the intervals, the laying out of the three different intervals is consistent or inconsistent with the single remote theory. Well, you would be bound by this court's prior determination, even though it related to a different claim, about the predetermined language, would you not? I'm sorry. One more time. You would be bound by this court's determination that the intervals have to be predetermined, would you not? I mean, because even though you're talking about a different claim, the language is the same. Top of my head, I would say yes. So what's your infringement theory on predetermined intervals? That's simply not an issue that was decided. I get that, but I want to know whether or not you're asking us to engage in an exercise of futility. No, I don't think at all that's the case. So what's your infringement theory on predetermined intervals? Well, what I can point you to is what's in the record in the exhibit B to the second amendment. In your chart? I don't see anything about predetermined. I mean, I'm extemporaneously going to look at this, because the issue wasn't decided by the district court. I understand.  Sure. So in your chart at the bottom of the first page, 111. What I would say in general is what you have is you have the hub that initiates the communication cycle in which there's a request, and then there is a response to the request. And so the length of time in what those intervals are function that's within the protocol. So therefore, I'm not sure what we're getting at exactly with predetermined or not, or what level of predetermined or I think predeterminable is the actual limitation. But I don't mean to defer or punt on that issue, only to say that the district court should decide that in the first instance. Why is it that when the district court gave you opportunities to have hearings on these motions to dismiss, you just didn't show up? So this is not going to be a completely satisfactory answer. I've taken the case over from prior counsel, and honestly, I don't know the answer to what happened, what the issues were, and how this all evolved. I don't know why he didn't show up. Obviously, he showed up. But that shouldn't really impact us. Repeatedly didn't show up. And then finally shows up the third time and begs for mercy again. Well, that shouldn't. I understand the frustration. I do. I don't think that should really impact what the claim says and whether this has been adequately plied or not. And I think, to your point, I think the district court opinion should make notes of that. Certainly, Khamed makes note of that. But that really isn't the issue. The issue is whether we have adequately plied infringement and whether a single remote theory has been properly plied. So arguably, that could be a factor in determining whether there should be any further amendments. But we're not asking to do that. What we're saying is the second amendment of the complaint has alleged all the necessary limitations and that the construction that the district court used to find otherwise wasn't proper, that it doesn't follow the rules of claim construction. And we really didn't have even a proper claim construction hearing. This all just sort of evolved within the context of a motion to dismiss. It's not to say that that can't be done. And we recognize that the law has changed on what's required in the pleadings. But I think there's a risk that you take when you do this on sort of an ad hoc basis during motion to dismiss briefing that doesn't have the same rigor that a normal claim construction would have, that you get some of the result here. Which, at the end of the day, is largely this. That the district court judge looked at the totality of the patent and found that the problem it was trying to solve really only made sense if you were looking at multiple remote systems. But that purpose can't trump the preamble, which says a communicator communicating with at least one other communicator. So the district court didn't really do anything with the preamble. First, we think it is limiting. Do you have any good faith belief that ComEd has any one hub, one remote systems? So I think part of that question gets at the difference between the term group, as used in the claims, and the system as a whole. I mean, yes, there are smart remotes or smart meters at multiple homes. But group is defined in the claim as these two communicators that are communicating over the communication cycle. So there isn't just one group all the time. And I think that's part of where the district court erred, was it looked at it's conflating the network as a whole with the group at any given time in any given communication program. Are you trying to tell me that if there's one hub that communicates with 15 different remotes in a neighborhood, that perhaps if you define group differently, when that hub communicates with just one of those remotes, that would satisfy these limitations? Correct. Because it's built off of what the communication cycle among the group. And the group can include one hub and one remote. It doesn't talk about the entirety of the network. It talks about the group at any given time. And that's the other issue, I think, where the district court erred. Do you believe that the claim requires the accused system to execute under a MAC protocol? One more time, I'm sorry. Do you believe the claim requires the system to execute using a MAC protocol? Yes, the MAC protocol is part of the claims, correct. So how have you alleged that they are utilizing a MAC protocol? It's the communication protocol that governs when the hub can communicate to the remote and when the remote communicates back to the hub. Am I right that one of the people in the OR would understand a MAC protocol to be a protocol that And I've never heard of or seen any evidence, and certainly there's no disclosure in this patent, of a MAC protocol in the context of one remote, one hub, where there isn't a need to worry about allocating interval times. So the preamble specifically says a communicator with at least one other communicator. So in the context of this patent, it's talking about the possibility of having that happen. In terms of why you would do that, there is some discussion in column 11 about the need, and even in this court's prior ruling in Medtronic, that even when it's one hub and one remote, there is still a need to have an orderly process for those communications so that there's not in the remote at any given time during the communication. So it's not inconsistent with that purpose to apply the claims to a single hub with a single remote. In taking even a step back from that, what the district court really did was attempt to find a disclaimer of a single remote in a single hub system. And there's nothing that's been pointed to that rises anywhere near the level of there being a disclaimer. There's discussion about a multiple remote system, but you also have a preamble that specifically calls for at least two, not more than two. And the very purpose for why you have these kinds of communication protocols are not at all inconsistent with a single hub and a single remote. You're well into your rebuttal time. Do you want to save it? No. Well, yes. OK. Seems like a strange response, but your time. Right. I guess the fee issue, I think, largely turns on the just, I mean, obviously, if you reverse, then there's no fees. But the question is, really, was it a plausible claim construction? And I think we've laid out the answer. Wait, so if we don't reverse on the 12B-6, do you have any separate arguments as to why fees should? Yes. Yes, sorry. I inarticulately gave you that answer. The answer is yes, because the question isn't whether the claim construction was wrong. It's whether it was plausible. And I think relying on the preamble with a good argument as to why the preamble is limiting, or at the very least ought to be considered, and a good explanation for how it's consistent with the purpose of the invention, I don't think that rises anywhere near to the level of extraordinary. So I think even if you affirm, you should reverse on the fees. And I think the district court should have paid more attention to it, or should have given more weight to what it said about comments behavior in this case, too. So I'll save the remaining time for it. Mr. Wembley. Thank you, Your Honor. May it please the court. The complaint, not only the original complaint, the First Amendment amended complaint, even the Second Amended complaint, don't accuse a single smart meter system. They accuse any smart meter, any system with one or more remotes. Now, it is undisputed at this point in the case that any system with more than one remote cannot infringe. Can you respond to, I was a little surprised to hear your friend's answer, that a system where you have one hub and 15 remotes can nevertheless constitute a one hub, one remote system, depending on how you define GRU. Yes, I was a bit surprised by that, too, Your Honor, because it's not just the case that they changed their theory of infringement from the three complaints, which say one or more, to the motion to dismiss. That's a new theory of infringement that I don't understand to be articulated in the court below or in the Court of Appeals briefs. I think it makes, frankly, nonsense of the patent. The whole point of the patent is to control and coordinate communications among multiple remotes to prevent collisions that would interfere with the signals. But what do you do about the language that says that all you need is at least one additional communicator? Well, that's not actually what the language says, Your Honor. The language of the preamble, assuming it's limiting, defines a communicator as either the hub or the remote, and it says merely that a communicator must be able to wirelessly transmit frames to and receive from at least one additional communicator. Right. That's true. And they define the hub as a communicator. But it does not follow, I think, Your Honor, that the hub, you only communicate to one. Because remotes are also defined as communicators, that language makes perfect sense in the context of the claims. A system, a communicator, needs to be able to communicate. The remote needs to be able to communicate with only one additional communicator, the hub. The remotes never communicate amongst themselves. The hub, by contrast, needs to be able to communicate with each different remote. So the language in the preamble is perfectly consistent with saying you've got to have communicators that must be able to communicate to at least one other communicator. That's all the remote does. But you've also got to have a MAC protocol, and the entire basis of the body of the claim is directed to the entire point of the invention, which is how do we allocate communication signals and timing between multiple remotes. Is your argument that the preamble is not a limitation? We do make that argument, Your Honor, although I don't think you need to conclude that, because I think the language of the preamble... But under what circumstances have we held that a preamble is a limitation? Your Honor, you've held a preamble is a limitation when it is necessary to the claim, when it breathes life and meaning into the claim. What else? What else? Haven't we held that when it provides antecedent basis for claim elements, it's always a limitation? That's correct, Your Honor. When it provides a definition... It does here. Well, I don't know that that's correct. Wait. When you say... I mean, Mr. Lindley, I know you are... You know well notions of prosecution. When you say a communicator, you're introducing an element. When you say the communicators, you're using antecedent basis to refer back to something that came before. In the first element, it says designated one of the communicators. I've never seen a case in which that wouldn't be the reference to an earlier described element. The only place... That's element one. The only place that element appears is in the preamble. Ergo, it has to be a limitation because every case we've ever had where there's antecedent basis is held, it's therefore a limitation. Your Honor, I... I know none of this is briefed, but see, part of my problem is that's why this is a pain in the ass for us on 12b-6. I mean, you know, because like all this kind of stuff probably would have gotten flushed out in some sort of claim construction hearing. And that jumped out at me instantly. I know it's not briefed, and I'm putting you on the spot, but... Well, I understand. Let me give you an answer to that question and then maybe put it in some broader context. So the answer to the question is, yes, an antecedent basis is usually the basis for a finding that a preamble is limiting. But what this court said in I.M.S. Technology v. Haas Automation, 206 F. 3rd at 1422, 1434-35, is that if the only thing that shows up in the preamble is just a descriptive name for the limitation that appears later, that is, if it's not defining the term, the mere fact that it is referred to later in the body of the claim is not sufficient. That said, let me be clear that I do not think this court needs to decide the question of whether the preamble is limiting to decide this case, for several reasons. Moving up one level of abstraction, as I just indicated, I don't think there's anything in the language of the preamble that requires this court to sort of find that all of the rest of the claim, the specification, and the purpose of the invention, which are to control and prevent communication collisions among multiple remotes, are out the window. But is that, again, it kind of goes to my other point, which is, why are we doing this on 12b-6? And the answer to that, Your Honor, I think is ultimately the final point. The reason we're doing this on 12b-6 is that they pled, not once, not twice, but three times, a complaint which is facially implausible, which everybody concedes can't possibly be right. That is that any number of remotes infringe the system. And they now concede, they do not attempt to argue, that any number other than one could possibly infringe the system. We are here on claim construction. They don't argue. I think they say at least one. I didn't understand them to be giving up multiple remotes. Oh, I think that's exactly... Well, not in the scope of the patent, but in the scope of infringement. Our system simply doesn't work in the way the patent describes it. Well, I understand them to say, at least at this stage, their allegation in their complaint is, you have a one-hub, one-remote system, and since the claim says at least one, you plausibly infringe, right? At least one could also be more than one. Whether or not that's true as a matter of claim construction, here, Your Honor, I don't... They do not and have not argued at any point in this case that any system with more than one remote infringes, until perhaps Learned Counsel's statement here. But they haven't alleged that you have a system with more than one remote. That's correct. That's correct. That's all you mean, right? That infringes. That's correct. That's right. And in fact, they say expressly in their opening brief, the system that Atlas accuses of infringement in this matter, however... It's a one-hub, one-remote. ...happens to be one... No, I get it, but I don't understand that point. Well, so... Where are you trying to go with that? Well, so let me try to be clear. That's not what the complaint says. The complaint says anything with any number of remotes infringes. That complaint is facially implausible because they know, and they do not now concede,  does not infringe because our... Is your point that none of the complaints ever suggested that a one-hub, one-remote... That's correct, Your Honor. ...system was the basis for their infringement? That's correct, Your Honor. It was always multiple remote systems. That's correct, Your Honor. One or more. And then in their response to the... Wait, wait, wait, wait, wait, wait, don't slide. One or more could be one. I'm totally confused. Okay, so let me... I saw one shell. It went from here to here and then over to here. So let me try to be clear, Your Honor. The complaints all say any ComEd system with any number of remotes infringes. Right. It is now undisputed that that is factually untrue, implausible, and they do not defend it, as to any system with more than one remote, which is essentially all of the systems. There's not even an allegation in the complaints that there's ever a one and only one remote system. The reason, what I'm trying to do, Your Honor... But it seems to me you're over-reading that language because I think if we agree that the claims include one or more and when they're saying any number of remotes, what I was asking you, do the complaints only talk about multiple remotes? But it seems like maybe that's the basic thrust, but it doesn't necessarily exclude one hub on remote systems. Right. Your Honor, Judge Moore's question was, why are we doing this on claim construction? And the answer, I think, is we are doing this on claim construction because they changed their theory in response to the motion to dismiss the second amended complaint to allege this one remote system for the first time. That theory is not in the... One hub, one remote. Correct. Yes. And because they changed that theory, they needed to present claim construction to this court as an argument that says, even though the patent is in fact focused on multiple remotes, we think it can and should extend to a one and only one remote system, one hub and one remote. Now, that, I think, ought to give this court some comfort. This is not a case, I think, where you have to conclude that we always have to do claim construction in order for a motion to dismiss. What the district court actually found in respect to claim construction was, can their new changed theory save, I think, not that complaint, but allow them to amend it? So an appendix at 15... He already had allowed the amendment. He allowed multiple amendments. They've now come up with a new theory in response to a second amended complaint. And the question the district court is trying to figure out is, should we have to allow a new amendment to allow them to plead one and only one and proceed with that case? And what the district court found was that Atlas's action thus depends on a claim construction that is wrong as a matter of law. Hence, any amendment would be futile. But he allowed the amendment. So I was completely confused by that. And my clerk says, don't forget, you want to ask him whether he allowed the Second Amendment or not because of the feudal language right here on my screen. But he amended the docket, and it says allowed. In response to the particular request to amend, he allowed it. And it says it right in his opinion that he allowed it. He allowed it in response to the Second Amendment complaint. So you're saying that they would have had to have a third amendment? Well, that's what they're arguing for. Right? So they argued effectively. Right? So they argued for a pled one or multiple in the original complaint, in the first amended complaint, and in the second amended complaint. One or more. One or more. Right? They then pivoted to a one and only one theory in the opposition to the motion to dismiss. They never went to a one and only one. So this is why I'm nervous about what you're requesting needs to be done at Twombly-Iqbal. Because I think they said one or more consistently throughout. And why isn't that enough? So, Your Honor, I think it's not enough in the specific factual context of this case because the or more is not infringing. And everybody, I think, now agrees that that's true. So imagine that they had instead pled that any device with a computer chip infringes. That complaint would be implausible, even though some tiny percentage of computer chip devices are smart meters that actually might work in the way their patent system would. Does that mean you're suggesting you weren't on notice as to specifically what elements? I mean, specifically not what elements, but specifically what devices they were accusing of infringement? See, any device with a computer chip would leave me, as an infringer, bewildered as to which of my devices they're accusing of infringement. But I feel like here, the complaint was very specific about what devices they were accusing of infringement. Well, it was. It was all smart meters with any number of remote connections. And then they abandoned that theory. They changed that theory in their response to the motion to dismiss to say, no, only systems where there's only one remote in the group. That's a very different group. It might not exist, frankly. There is no actual. Well, that's what I wanted to ask you. And I know it's not in the record. You may not know it. And setting aside what your friend said just today in that argument, are you aware of any systems where ComEd would have one hub and one remote? We are not aware of any such system. I would be surprised if it existed, except by sort of sheer accident, because the whole point of the communications network is precisely to communicate a hub. Reasoning of a hub is that it communicates with multiple remotes. In any event, they certainly haven't alleged that any such systems exist. I would like to say just one note on attorney's fees, Your Honor. Can I just cut you off and ask you a question on that? If we disagree with you on the one hub, that theory, but agree with you on the repeating, do we need to send the attorney's fee award back? I don't think so, Your Honor. So the attorney's fees award is based on a sort of 17-page set of findings. It is true that some of those findings are based on the merits. But there's more than that, right? But the bulk of the findings were that there was a claim construction that just wasn't viable. And yet, if we think the claim construction is viable, wouldn't we have to send it back? I don't believe so, Your Honor. Because there is sufficient basis here to affirm and support the district court's finding that there was bad behavior in this part. Well, he didn't like the behavior on the part of you guys either. So the district court was concerned that we made arguments that he didn't find persuasive in the fees motion. He nonetheless, in the exercise of discretion, sort of found that there were plenty of good arguments. But he also made a bunch of specific findings about their behavior in this case, that the implausibility of the infringement theory was readily apparent, that they filed this action without. Yeah, but that's all tied up with the one or more remotes issue, isn't it? I mean, if we set apart that side of the case, and if we only had you prevailing on the 12B6 on the repeating, I mean, I know it's an abuse of discretion standard. But that sounds kind of like a run-of-the-mill application of claim language to allegations and finding them insufficient that wouldn't meet an exceptional circumstances standard. I think if that were the only fact present in the case, Your Honor, that's right. But I think what we have is a procedural history in which they file a complaint that they know is implausible. They make us show up to defendant, and they don't even show up to oral argument. They file an amended complaint, when he allows them to amend, that is substantively identical, make us file a second motion to dismiss, and then pull the complaint at that point. They file a third complaint that has the same deficiencies of the first. And then when we file the third motion to dismiss, they pivot and change their argument. The district court specifically found that any claim that they didn't, quote, engages in revisionist history, end quote, involves a flat misrepresentation, unquote. That's 832 and 833. I don't really even understand how we got to repeating cycles. I mean, I looked at all the motions to dismiss below, and they were brief, shockingly brief. But they relied on this claim construction theory, which we may or may not agree with. And they relied on a powering down limitation. And all of a sudden, here we are with a repeating cycle in the court's opinion. Where did that come from? Well, I think the repeating cycle is there, Your Honor, because it is the one and only element that distinguishes this claim from all the claims that have previously been held invalid. And because in the course of defending that in the patent office, what Atlas said was that claim element requires that information transmitted from the hub to the remotes be sufficient to prevent the collision of transmissions from different remotes competing for communication opportunities with the hub. So they have, I think consistent with the language of the patent, regularly taken the position that this is, in fact, something that these things allocate time within predetermined intervals between individual remote communication, individual hub to remote communication, and group hub to remote communication. That makes no sense in a theory where there's one and only one. Now, let me ask you something about how, don't worry about your time, please. Let me ask you something about how that affects the attorney's fee motion. So I think you have a strong case on the repeating cycle element. But I read through all of the briefs you filed, all three, of the motions dismissed below, and it was never mentioned. Never, not once. The district court seems to, did it come up at the hearing? I mean, how did the district court get this into the opinion? How did it end up there? And the reason that I'm bothered by it is he based, I'm looking on appendix at page 30, part of his decision on attorney's fees on this point. And what bothers me, he bases it on the two points, the two legal points. The first is the one, the at least one, each remote problem. But he also mentions the repeating cycle element. Why should they have to pay attorney's fees for failing to comply with the repeating cycle element, where you never made a motion to dismiss on that basis? So they couldn't have saved you the fees of filing all your papers, because none of them pertain to that issue. And the district court seems to have come up with it entirely on his own. And a blind squirrel finds a nut once in a while, so I don't blame him. I think it's great. But why would they have to pay your fees if that's part of the reason he sees the problem? Do you understand? Yeah, I do, Your Honor. And I think the answer is, again, if the substantive merits were the only basis here, I think that would be a problem. But the behavior in this case by Atlas is itself independently sufficient under this court's case law to support an award of fees. The repeatedly moving target, as this court referred to in Opler versus Vizio, and I will note that the target moved again here at oral argument, as they offered yet another new claim construction. The fact that they showed up put us to the work of filing motions and then didn't show up to defend them. Does he say that, though? But he could have just granted the motion with prejudice the first time they didn't show up. I mean, that would have saved a lot of people a lot of effort. But why didn't he do that? I mean, he could have sanctioned them all along the way. And to sort of keep them stringing along and then say, OK, now I'm going to sanction them at the end of the day, doesn't seem to make a lot of sense. Well, I understand that he could have done that, Your Honor, although then probably they would have been here complaining that they hadn't gotten the normal process the Seventh Circuit law requires, which is an opportunity to amend. And I think it might have been distinguishable on the grounds they didn't bother to show up to defend it. But I think the district court's conclusion to bend over backwards to give them extra opportunities to try to articulate a theory shouldn't be held as a reason why the fact that they still couldn't do it, that they tried again and again and still haven't come up with a theory that works, shouldn't be found, I think, as a reason to avoid an award case. So at the end of the day, you're saying, back to the merits for a second, you're saying that because they argued to the PTO that the repeated cycle limitation operates because of the multiple remotes, that what the court was ultimately saying is looking at what they said to the PTO and comparing that to their argument is that they don't need multiple remotes. They said you can't do both. Is that what the district court was saying? I don't know that I would say this, that you can't do both. It's that this element, I think, and frankly, the rest of the claim are all- They said you can't practice the repeating cycle limitation under a one remote. Oh, yes. OK. Yes. Yes, that's correct. That's right, Your Honor. And I think also, frankly, it's- Does it come from the PTO proceedings? I don't think it comes just from the PTO proceedings, Your Honor. I think it comes from the claim language. And it comes from, frankly, the whole point- But it wasn't in the briefs, is the thing that we're kind of trying to figure out. I mean, he found it. He came up with it. I mean, district court judges are struggling with the volume and the complexity of these cases. It's not often that we see one that comes up with an entirely distinct technical theory on their own that wasn't briefed and argued by the parties. That's why we were kind of curious. We don't have the transcripts. Did it come up in the hearing? Did you suddenly make this new argument in the hearing or something? And he's like, ah, yes. I love it. Where did it come from? I believe it was, in fact, discussed in the hearing, Your Honor. But I guess I will say it is not as entirely different an argument as that statement makes it seem. It is part and parcel of the point of the invention, which is to actually allocate communication with multiple remotes to prevent collision. And the way in which it does that is by specifying predetermined intervals within each inbound and outbound communication. I think it's something that you clearly and undisputedly referred to the frame limitation and the power limitation throughout your dismissal papers. And the district court even says that, by the way, in this opinion. You argued the frame limitation and the power limitation. The repeating cycle limitation is a totally different limitation than the ones you identify as the frame limitation and the power limitation. That's what your motion to dismiss the Second Amendment complaint was about. Frame and power. Repeating cycle is unquestionably a different limitation. You identify them. Yeah. I agree with that, Your Honor. And the district court certainly treats them differently. But they are all part of the setup for the invention, which is let's use a MAC protocol to allocate information among different remotes. How do we do it? In the patent, they do it by using predetermined intervals to identify the particular times at which individual remotes will send signals so they don't conflict. And it is undisputed that comments meters just don't work that way. Comments meters work in precisely the old prior art way. But I didn't see anything in your motions to dismiss or in the transcript. Because I did read the transcript. And there's nothing in there about repeating cycles. But I didn't see anything about even the predetermined interval. I mean, that's a great argument, I think, on your part. That they've got this problem. And that our court has construed what that means. But it's just not in those motion papers. I agree with you, Your Honor. So if, in fact, the court decision for fees hinges on that, then I think it is right that it's appropriate to have the district court look at the fees issue again in light of the fact that you affirm on only some but not all grounds. But I don't think that that's actually necessary in this case, precisely because I think the other grounds for fees are themselves independently sufficiently strong, that even if none of the merits arguments had been made at all, they would have justified an award of fees. But he didn't conclude that. In fact, he concluded you were both bad actors. Well, he did, in fact, criticize comment for making arguments that he didn't find particularly persuasive. We disagree with that criticism. But nonetheless, he concluded that those arguments didn't, in fact, justify denying an award of fees. That's true for several reasons. First is, all of those- But all the litigation conduct that you articulated, the no-shows, the repeated filings, the withdrawals without response, he doesn't suggest that that litigation conduct is his basis for his determination of exceptionality. He does not say, Your Honor, that it is the only basis. He certainly relies on it as a basis. Where does he rely on it? So the relevant provisions, I think, Your Honor, are in A30 through A32 in the record. I'm here. I'm at the right page. So tell me where he references their failure to show up and all of that. Well, so what he says is that there's no explanation for the conduct. Atlas filed the FAC. No, the only conduct he's referring to is the conduct in the prior paragraph, which is how, when it finally offered its paired communicator protocol theory. That's the conduct. Well, Your Honor, that's right. The conduct isn't the not showing up and withdrawing and stuff like that. Oh, I disagree with that, Your Honor. I think, right, what the court says here is Atlas filed the FAC, the First Amendment complaint, knowing the arguments ComEd would make for its dismissal. ComEd had already lodged them against the complaint, but without any intention of meeting those arguments. Instead, withdrawing the FAC and then addressing an SAC. Even then, in the SAC, Atlas did not proffer its theory it's now actually arguing in the SAC. Instead, raising it for the first time and arguing why Exhibit B's account of how the network products allegedly infringed Claim 1 did not, in fact, plead it out of court. We see no explanation for this conduct other than they filed this action without adequate investigation. It refers to the late appearance of the theory in particular. And Atlas continues to do so now, floating an attempted explanation for the first time in opposing the motion for fees, a new motion entirely. Filing suit with such a poorly thought out conception of how the ex- You jumped over the repeating cycle part, but that's OK. I'll let you do it. Sure enough. The time's up, Mr. Lemley. All right. Thank you. Do you have any closing thoughts? I think we understand. No, Your Honor. Thank you. OK. Let's have rebuttal. Why don't you give him his whole five minutes back? Mr. Lemley went substantially beyond that, so if you need even more time, I can allow for that. Thank you, Your Honor. If you think it's necessary. Here's where I'd like to start, is this notion that this single remote theory sort of came up very late in the game. It didn't. And I think it's important to keep in mind, again, the context here, which is we didn't go by the normal patent rules. We didn't go by a process where you have exchange of contentions, and then you have claim construction, and then you have dispositive motions, or you have a trial. This whole thing evolved very ad hoc from motion to dismiss to arguments they made to arguments we made in response. The things that came up that the district court just ruled on without even being briefed. That's your fault, though. So let me point out what the- It's pretty amazing for a district court to give you three opportunities for hearings and ultimately not take advantage of them. I have no justification for why prior counsel didn't show up. Not just the nutshell, but after the first complaint and the motion to dismiss, you withdrew the first complaint, and then filed a second complaint that was identical to the first complaint. How is that not just frivolous, unnecessary expansion of litigation? Let's not forget there was also the issue of an additional entity that was taken out of the first amended complaint to the second amended complaint. Maybe it was the original or the first, but I think it was from the first to the second. At the end of the day, when you look at Exhibit B in the second amended complaint, it clearly talks about a single remote. If you go to the third row across, it says the access point hub establishes a communication cycle. Yes, the access point hub establishes a communication cycle by transmitting a read request message or a power status check message to a smart meter and then in params remote. The read request is set during one interval in the communication cycle, and thus smart meter sends a read message or a power status. So you think he erred to the extent that he didn't read the second amended complaint as containing this one-to-one argument within it? Yeah, I'm saying to the extent that this is going to turn on whether there's been an adequate pleading of that theory or when it evolved or the notion that it's just being raised now or was just being raised during the briefing is belied by what is actually in the second amended complaint. Where in the second amended complaint does it address the repeating cycles? The repeating cycles issue? I don't know that I can really answer that question. The claim chart goes through all of the claim limitations. And really, as to repeating cycle, as counsel acknowledged, it's really part and parcel of the issue of whether it's a single remote or multiple remote. So if we're going to get to that issue, I think the proper resolution would be if you agree that the construction that forecloses a single remote is incorrect, then it all needs to get looked at again. We don't have a proper record to deal with that issue. Any additional things related to that are directly tied to the idea of there being one remote or multiple remotes. So the point I wanted to make was just that it is not at all accurate to say that this theory just came about late in the game. It was laid out in the claim chart. Again, in a context in which if it evolved in atypical ways, because this was not a typical process. I mean, the single remote issue really came to the front as a response to one of the arguments that had been made by ComEd. And that's how we got to where we got to. The last thing I just want to clarify on the fees issue is it wasn't just sort of random little litigation issues on ComEd's side. And the court described it as something that was or bordered on a misrepresentation. So if what we're left with at the end of the day is just that counsel for the plaintiff didn't show up to hearings, which obviously he should have, that's not an issue for exceptional case. I mean, that's potentially other kinds of sanctions. What do you mean? I mean, if he had specifically said, this is exceptional, because despite numerous opportunities to cure this case and give amendments, they were frivolous in repeating their claims exactly in their first amendment complaint. They didn't show up for hearings. I find that exceptional. I award fees. Now, I know he didn't do that. But how would we reverse that finding on an abusive discretion standard apart from the merits? Well, you have one issue being just the actual way the litigation was conducted. And then you have what construction was put forth or was it an implausible construction? I know. That's what I'm asking you. Putting aside all the merits, if he had made those findings and awarded fees based solely on the way the litigation was conducted, how could we possibly reverse that under an abusive discretion standard? Because you have documented in the same opinion similar kind of finding. No, no. I'm not talking about what he actually did. I understand that he did not make those specific findings in that way. But if he had, or if we read it that way, it's up in the air. But how would we reverse that under an abusive discretion standard? Because an entity who's asking for fees based on conduct that the same judge finds to be similar to the conduct that is the award of fees would be an abusive discretion. OK, I think your time's up. We have the case under submission. Thanks both counsel. Our last case.